little was the owner of the premises, * * * and conveyed the said premises to the plaintiff." Then "said defendant, further answering the said complaint, * * * denies the same, and each and every allegation therein contained, except those parts and allegations hereinbefore expressly admitted or otherwise denied." A fair construction of the answer is as an admission that upon March 4, 1899, when he conveyed to plaintiff, Doolittle had become invested with the title, so as to make his conveyance effective, and it should not be construed as admitting the allegation of the complaint that for five years before that he had at all times so held the title. This view is rendered more easy, and one in favor of plaintiff more difficult, by the evidence which she drew out from the witness Chambers that Mrs. Culnane had "owned this property for more than ten years." There is no finding of ownership by Doolittle prior to March 4, 1899. I also think that there was no sufficient proof that the property was not properly assessed to Mary M. Culnane as a resident in 1897. The only evidence directly upon this point was given by plaintiff, who said:

"I know of no such a person as Mary M. Culnane, belonging to me. I had a sister-in-law by that name, and she never had any interest in this lot, and she died prior to 1897."

This evidence was so limited by its form, and the further fact that the witness at all the times in question lived in Pennsylvania, as to fall short of satisfactorily proving the nonexistence of the person assessed.

Plaintiff is not in position to urge that the evidence of the witness Chambers, above quoted, showed her to be the owner of the property in 1897, and that for that reason the assessment was invalid. The record title shows that evidence to have been incorrect as a whole, and, moreover, plaintiff's complaint was not framed, and the action was not tried, upon any theory of ownership by her in 1897.

These views render it unnecessary to consider other questions presented. The judgment should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.

---

McINTOSH v. KILPATRICK.

(Supreme Court, Appellate Term. May, 1904.)

MONEY HAD AND RECEIVED.

　　　Plaintiff having paid money to defendant's employé to apply on rent of defendant's apartment, which he then assumed, but had no authority, to rent to plaintiff, and defendant not having ratified the agreement or made another, plaintiff is entitled to recover the money.

Appeal from Municipal Court, Borough of Manhattan, Twelfth District.

Action by James H. McIntosh against Ringland F. Kilpatrick for money had and received to the use of plaintiff. August 15, 1903, plaintiff gave an employé of defendant $20, and received a memoran-

dum·as·follows: "Received from James H. McIntosh·$20 to be applied on·rent of ·apartment * * *· rent to be $1,300 for term ending September 30, 1904, tenant to have possession whenever he wishes. [Signed] John Hartle." The parties subsequently disagreed over details of occupancy, and plaintiff never took possession, and now sues for the $20. Judgment for plaintiff. Defendant appeals. Affirmed.

The following is the opinion in the court below (Bennet, J.):

The defendant's engineer, Mr. Hartle, swore that his authority was limited to showing apartments and giving prices, and that final arrangements for leasing were made by some other person. Consequently he was without authority to bind the defendant by the signing of the instrument of August 15th. It does not appear that the defendant ever ratified his act, with knowledge of what he had done. The subsequent interview between the plaintiff and defendant resulted in a disagreement. I am thus led to the conclusion that there was no lease or agreement for leasing between the parties. There having been no agreement, there is nothing to justify the defendant in retaining the $20. Judgment, therefore, for the plaintiff for that amount.

Argued before FREEDMAN, P. J., and SCOTT and TRUAX, JJ.

Maas & Goldberg, for appellant.
Charles L. Burr, for respondent.

·PER CURIAM. Judgment affirmed, with costs, on the opinion in the court below.

---

SANFORD v. SANFORD.

.(Supreme Court, Special Term, New York County. July, 1905.)

1. DIVORCE—MOTION FOR ALIMONY—AFFIDAVITS.
Affidavits for plaintiff, on defendant's motion for alimony and counsel fee in an action to annul a marriage, which show not only the conduct of the parties towards each other, but also towards others, are proper, so far as the latter has a bearing on the wife's conception of and adherence to correct standards of conjugal conduct.

[Ed. Note.—For cases in point, see vol 17, Cent. Dig. Divorce, §§ 670, 671, 676.]

2. SAME—REPLY AFFIDAVITS—SUPPRESSION.
Defendant in an action to annul a marriage is not entitled to suppression of plaintiff's affidavits on motion of defendant for alimony, where the matter therein complained of is in reply to defendant's affidavit, wherein she ·accepts the issue tendered by the complaint, as to whether the estrangement was due to the fault of the one or the other, and seeks to show that the fault was his.

· Action by Henry Sanford against Grace B. Sanford. Defendant moves to suppress certain affidavits. Denied.

Nicoll, Anable & Lindsay (John D. Lindsay and Raymond D. Thurber, of counsel), for the motion.
Arthur L. Livermore (Alton B. Parker, of counsel), opposed.

GIEGERICH, J. The motion to suppress certain affidavits filed on behalf of the plaintiff on the defendant's motion for alimony and counsel fee in an action to annul a marriage should be denied for two reasons: First, because on such an application for alimony all facts